**COLONIAL OIL INDUSTRIES, INC. and Colonial Terminals, Inc., Plaintiffs,**

v.

**UNDERWRITERS SUBSCRIBING TO POLICY NOS. T031504670 AND T031504671, Defendants.**

Civil Action No. 494–010.

United States District Court,
S.D. Georgia,
Savannah Division.

Dec. 6, 1995.

Ronald Clarkson Berry, Laura Jean Tromly, Adams, Gardner & Ellis, Savannah, GA, Tracy Ann O'Connell, Adams & Ellis, Savannah, GA, for plaintiffs.

John Milton Tatum, Miller, Simpson & Tatum, Savannah, GA, for defendant.

#### *ORDER*

EDENFIELD, Chief Judge.

Pursuant to F.R.Civ.P. 59(e), Underwriters moves this Court to alter its November 6, 1995 summary judgment to Colonial by deleting the attorney's fees and costs of this litigation, as well as any discussion regarding the agency of R.L. Harley and Associates. Colonial opposes the motion.

## I. Attorney's Fees And Costs

In its November 6, 1995 summary judgment Order, 1995 WL 692691, the Court stated:

### (2) Defense Costs

Colonial also seeks the initial defense costs of the Gay lawsuit and prejudgment interest. Colonial is entitled to recover any sums it spent to defend against Gay's action. [Cit.] This includes attorney fees. [Cit.] The particulars of the $1,290,792.81 non-penalty amount demanded by Colonial (*see* Colonial's 9/18/95 Brief Exh. A (9/18/95 F. Brown Aff.)) are challenged by Underwriters in only two respects—$12,731.03 in "ERM expert witness" fees and a Colonial executive's travel costs for an overseas deposition ($6,411.33, or half of $12,822.65 in claimed travel costs for two). Underwriters' 9/27/95 Reply Brief at 4 n. 1.

11/6/95 Order at 28.

Underwriters points to the F. Brown Affidavit, upon which the Court relied, and correctly notes that the $1,290,792.81 non-penalty amount included $134,995.54 in legal fees and expenses in the prosecution of this (*i.e.* *Colonial v. Underwriters*) case. However, the reasoning contained in the Court's November 6, 1995 Order supports Underwriters' present contention that, since Colonial is not entitled to recover under O.C.G.A. § 33–4–6, it can recover *Gay v. Colonial* attorney fees and expenses, but not *Colonial v. Underwriters* (*i.e.*, present-litigation) attorney fees and expenses.

Therefore, Underwriters maintains, the Court must grant its Rule 59(e) challenge to this aspect of the judgment and reduce the $1,284,381.48 final judgment by $136,328.56, representing the present-litigation attorney fees and costs claimed in the Brown affidavit. Colonial does not argue with this calculation, nor the new net $1,148,052.90 judgment amount that Underwriters has calculated.

Colonial does contend, however, that *American Family Life Assur. Co. v. U.S. Fire Co.*, 885 F.2d 826 (11th Cir.1989), authorizes recovery of its present-litigation attorney fees and expenses under either O.C.G.A. § 33–4–6 or § 13–6–11. *Id.* at 833 n. 3. Thus, Colonial maintains, it can recover present-litigation fees and costs under O.C.G.A. § 13–6–11 even if it cannot under O.C.G.A. § 33–4–6.

Post–*American Family* Georgia precedent, however, states that a "claim for attorney fees and expenses of litigation under O.C.G.A. § 13–6–11 is *not* authorized. [Rather, t]he penalties contained in O.C.G.A. § 33–4–6 are the *exclusive* remedies for an insurer's bad faith refusal to pay insurance proceeds." *Howell v. Southern Heritage Ins. Co.*, 214 Ga.App. 536, 537, 448 S.E.2d 275 (1994) (emphasis added). Moreover, O.C.G.A. § 33–4–6 must be strictly construed. *Primerica Life Ins. Co. v. Humfleet*, 217 Ga.App. 770, 771, 458 S.E.2d 908 (1995) (citing *Howell*). Sitting as an *Erie* court, this Court must follow that precedent and disregard *American Family*.

In that regard, O.C.G.A. § 13–6–11 requires a showing that "the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense." *Shepherd v. Aaron Rents, Inc.*, 208 Ga.App. 139, 143, 430 S.E.2d 67 (1993). Underwriters did not act in bad faith, and thus was not stubbornly litigious, nor caused Colonial unnecessary trouble and expense, as these phrases have been interpreted under O.C.G.A. § 13–6–11. Instead, Underwriters simply misapprehended less-than-clear Georgia law, *see* 11/6/95 Order at 29–30, and thus no bad-faith can be found. *Ga. Farm Bureau Mut. Ins. Co. v. Richardson*, 217 Ga.App. 201, 206, 457 S.E.2d 181 (1995) (an insurer need only have "reasonable and probable cause" to escape the bad-faith penalty); *accord, Roland v. Georgia Farm Bureau Mut. Ins. Co.*, 265 Ga. 776, 778, 462 S.E.2d 623 (1995) ("doubtful question of law").

Colonial points to that portion of this Court's November 6, 1995 Order stating that "damages for breach of an insurance contract by failing to defend [do] not automatically include the full amount of the judgment rendered against the insured, [rather, it appears] that the appropriate measure of damages [is] that which [is] 'traceable to [the insurer's] refusal to defend the action.'" *Ga. Farm Bureau*

*Mut. Ins. Co. v. Martin,* 264 Ga. 347, 350 n. 4 [444 S.E.2d 739] (1994) (quoting *Leader Nat. Ins. Co. v. Kemp & Son,* 259 Ga. 329, 331 [380 S.E.2d 458] (1989)).

11/6/95 Order at 24 n. 5.

Colonial argues that, since its present-litigation attorney fees are "traceable to the insurer's refusal to defend the action," it therefore should be awarded them under *Martin* and *Kemp.* The Court disagrees. Through O.C.G.A. § 33–4–6, the Georgia General Assembly has spoken, and so has the Georgia Court of Appeals in stating that "the penalties contained in O.C.G.A. § 33–4–6 are the *exclusive* remedies for an insurer's bad faith refusal to pay insurance proceeds." *Howell,* 214 Ga.App. at 537, 448 S.E.2d 275 (emphasis added); *see also Hughes v. State Farm Mut. Auto Ins. Co.,* 101 Ga.App. 443, 445, 114 S.E.2d 61 (1960) (insurer's refusal to defend and pay costs subjects insurer to O.C.G.A. § 33–4–6 penalties). Whatever the *Martin/Kemp* courts meant by "traceable damages," they did not explicitly overrule the O.C.G.A. § 33–4–6 exclusive remedy with respect to attorney fees and expenses.

## II. Agency

This Court found that R.L. Harley and Associates acted as Underwriters' agent, at least with respect to Colonial's notice that it challenged Gay's factual assertions, thus precluding Underwriters' ascertainment of coverage under the "exclusive pleading rule." Underwriters contends that this finding was unnecessary and therefore should be deleted from the November 6, 1995 Order. As Colonial correctly points out, the finding was necessary to the Court's core analysis, namely, that Underwriters mistook Georgia for an "exclusive pleading rule" state, when in fact it is not, at least when an insured or some other source places the insurer on notice that it must undertake a reasonable investigation of the third-party's claims before deciding not to defend its insured.

## III. Conclusion

Accordingly, the Court *GRANTS* Underwriters' Motion To Alter Or Amend The Judgment Pursuant To FRCP 59(e) to the extent it seeks reduction of the judgment against it. The November 6, 1995 Order, therefore, is *MODIFIED* to reflect the fact that Colonial is not entitled to the attorney fees and expenses Colonial incurred in this (*i.e., Colonial v. Underwriters* ) litigation.

That, in turn, requires that the November 6, 1995 Judgment be, and therefore is, *VACATED.* The Clerk shall enter a new judgment in favor of plaintiffs Colonial Oil Industries, Inc. and Colonial Terminals, Inc., against defendants Underwriters in the amount of $1,148,052.90.